## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ALFRED MILTON EVANS, ET AL.,        )
                                    )
                  Plaintiffs,       )
vs.                                 )        NO.  CIV-01-0252-HE
                                    )        (Consolidated Number)
MIKE FOGARTY, ET AL.,               )
                                    )
                  Defendants.       )

## ORDER

Pending before the Court are plaintiffs' motion for attorney's fees, expert fees, expenses and prejudgment interest, plaintiffs' appeal from the Clerk's cost determination, and the motions to set bond of defendants Fogarty and Brown.[1]  A hearing on the attorney's fee motion, which has been fully briefed, was held June 28, 2005.

### I.  Attorney's and paralegal fees

Plaintiffs seek attorney's fees, paralegal fees, and expenses as the prevailing parties, pursuant to 42 U.S.C. §1988.[2]  Both defendants object to any award of fees or expenses, arguing plaintiffs have failed to submit a reasonable application which takes into account the actual results obtained, the disposition of the various parties' claims or which provides information adequate to determine an appropriate fee.

---

[1]  *The Court previously entered its order temporarily staying execution on the judgment pending a determination of plaintiffs' attorney's fee request and deferring until then the setting of the amount of the supersedeas bond.  Order, June 2, 2005. The defendants' motions to set bond [Doc. nos. 492, 493] are addressed in a separate order.*

[2]  *42 U.S.C. §1988(b) provides, in pertinent part, that in certain federal civil rights actions, including those brought pursuant to 42 U.S.C. §1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."*

The threshold question is whether a particular party qualifies as a "prevailing party." Plaintiffs "prevail" for attorney's fee purposes if they succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Here, although the motion for fees is made in the name of all plaintiffs,[3] it is clear that only some of the plaintiffs qualify as "prevailing." The judgment in this case reflects that the following plaintiffs prevailed against defendant Fogarty on their First Amendment claim, in the amounts indicated:  Alfred Milton Evans ($10,000), John Majors ($75,000), Cynthia Majors ($75,000), Neal Thrift ($50,000), Nancy Thrift ($50,000), LeRoy Wheeler ($10,000), and Charles Parkhurst ($250,000).  In addition, plaintiffs Neal Thrift and Nancy Thrift prevailed against defendant Brown in the amount of $25,500 each.[4]  Defendants prevailed as to all other plaintiffs.  Defendants also prevailed against the above-named plaintiffs on all claims other than their First Amendment claim. However, a judgment for damages in any amount, compensatory or nominal, is sufficient to render a plaintiff the prevailing party.  Farrar v. Hobby, 506 U.S. 103, 113 (1992).  Applying this standard, the above-named plaintiffs are "prevailing parties" within the meaning of §1988, entitled to an attorney's fee award.

In determining a reasonable attorney's fee, the court must first arrive at a "lodestar"

---

[3]  *As originally filed, there were 26 plaintiffs involved in these cases: eleven individual plaintiffs who were owner/operators of mental health providers, eight corporate providers, and seven recipients of mental health services, who purported to represent a class of low income mental health patients.*

[4]  *The judgment in favor of Mr. and Mrs. Thrift was for $25,000 compensatory damages and $500 punitive damages each.*

figure by multiplying the hours plaintiffs' counsel reasonably expended on the litigation times a reasonable hourly rate.  Case v. Unified School District No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Id. at 1249 (quoting Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1201 (10th Cir. 1986)).

The first step in calculating the lodestar is to determine the number of hours reasonably spent by counsel for the party seeking the fees.  Case, 157 F.3d at 1250.  The party claiming the fees has the burden of proving hours to the court by submitting meticulous, contemporaneous time records that reflect, for each lawyer for whom fees are sought, all hours for which compensation is sought and how those hours were allotted to specific tasks.  Ramos v. Lamm, 713 F.2d 546, 553 (10th Cir. 1983).  The court must then examine the hours actually expended and reduce that number to the hours reasonably expended.  See generally Case, 157 F.3d at 1250.

Here, plaintiffs state their attorneys have expended 4799.9 hours pursuing this case over the course of approximately four years since its inception.[5]  At the attorney's fee hearing, defendants Fogarty and Brown stipulated that the indicated hours had been actually spent and that the time spent on each particular task was reasonable.  Defendants objected, however, to recovery for time spent on certain tasks, asserting that fees incurred in

_____

[5] *The indicated figure is based on the plaintiffs' summary totals in their supplemental brief filed July 8, 2005 (4787.9 hours), plus 12 hours spent in connection with the fee hearing. Defendants have raised no objection to the summary's accuracy.*

conjunction with some of those tasks or activities could not reasonably be shifted to them.[6]

Certain of defendants' objections have merit. First, the Court concurs that time spent issuing press releases or dealing with the media is not appropriately shifted to the defendants in a case such as this. *See* Halderman v. Pennhurst State School & Hospital, 49 F.3d 939 (3rd Cir. 1994) (citing cases). Approximately fifteen hours were devoted to this task.[7] Defendants also object to being charged for time Tulsa counsel spent traveling to Oklahoma City for court proceedings, arguing that this case could have been handled by local attorneys. The Court concludes plaintiffs are entitled to reimbursement for their counsels' travel time, but that the rate of compensation for time spent traveling should be half of that for the rendition of actual legal services. *See* Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir. 1990) (attorney's unproductive driving time compensable at reduced hourly rate (25% of standard hourly rate)); Berry v. New York State Dep't of Correctional Servs., 947 F.Supp. 647, 651-52 (W.D.N.Y. 1996). The Court estimates that plaintiffs' counsel spent fifty hours driving between Tulsa and Oklahoma City during the course of this case. Accordingly, the total hours are reduced by twenty-five.

Defendants object to time apparently spent by plaintiffs' counsel lobbying the

---

[6] *Defendants also argued that plaintiffs' fee request failed, in determining the degree of success achieved by the plaintiffs, to take into account the multiple parties and multiple claims that were involved in the case. Those arguments are addressed below.*

[7] *As to virtually all of the adjustments noted, the Court has necessarily estimated the time involved. While plaintiffs' time records are sufficient, in general, to meet the standard for an award of attorney's fees, they often do not break out particular activities with such detail as will permit exact determinations to be made and are, in any event, spread throughout hundreds of pages of records, making any summation of the time spent on a particular task difficult.*

legislature in connection with this action.  The Court concurs that time spent on such activities should not be borne by defendants.  <u>Watkins v. Fordice</u>, 7 F.3d 453 (5th Cir. 1993) (disallowing time for lobbying and press contacts).  Approximately thirty hours were devoted to preparation for and attendance at these activities.[8]

Defendants also object to the time spent attempting to disqualify the trial judge.  Although plaintiffs did not prevail on that issue, the Court concludes the time is properly included insofar as it involved efforts directly pertaining to recusal or disqualification.  A party does not have to prevail on a motion or issue to recover for time spent on it.  <u>Berry</u>, 947 F.Supp. at 652. However, the time records also reflect time plaintiffs' counsel spent pursuing collateral proceedings, other than in this case or on related appeals, based on the same allegations.  The Court finds that cost is not properly shifted to defendants and estimates the time spent on such collateral proceedings at twenty hours.[9]

Plaintiffs expended a substantial amount of time in connection with mock appellate sessions and a mock trial prior to the first trial.  As far as the Court can determine, it does not appear the time counsel spent preparing for appellate proceedings was so significant as to raise any question as to whether it was reasonable.  However, the mock trial involved substantial time.  At least three lawyers billed time, spread over several days, with the

---

[8] *The time records also include time spent contacting legislators who were or might have been witnesses in the case.  Such time is properly compensable.  Only that which appears to have been devoted to lobbying is intended to be excluded.*

[9] *Approximately twenty-five hours of what appears to be paralegal time are attributable to the collateral proceedings.  The paralegal time will be adjusted accordingly.*

5

apparent total of at least two hundred hours.  Obviously a portion of the time spent preparing for the mock trial would have been spent anyway in more conventional pretrial preparation and the Court does not doubt that the mock trial process may have been helpful.  The Court concludes though, that in the circumstances of this case, such an intensive and extensive "trial run" prior to the actual trial proceedings resulted in the expenditure of more trial preparation time than is reasonable to be shifted to defendants under the applicable standards.  A reduction of one half the approximate time spent on the mock trial, or one hundred hours, is therefore appropriate.

Plaintiffs' time records also include a few hours devoted to preparations for the appeals undertaken since the judgment was entered in this case.  Those hours, approximately ten, are properly excluded from the present computation.  The determination of any entitlement to an attorney's fee in connection with the current appeals should await their dispositions.

Finally, the Court notes that a few entries appear to involve time spent on matters not reasonably related to this case.  The records include references to work on a qui tam suit, tax enforcement proceedings against some of the plaintiffs, dealings with unidentified government investigators, and the like.  Such entries total approximately ten hours, which should be excluded.

Giving effect to the parties' stipulations,  reduced by the above adjustments totaling

210 hours,[10] the Court concludes the total hours reasonably spent by plaintiffs' counsel in connection with this case are 4589.90.

The next step in calculating the lodestar fee is determination of a reasonable hourly rate or rates for counsel.  In general, a court looks to the "prevailing market rates in the relevant community" when calculating a reasonable fee.  Blum v. Stenson, 465 U.S. 886, 895 (1984).  The relevant market determination is based on what the market commands for civil rights or similar litigation.  Case, 157 F.3d at 1255.  The rates are determined based on evidence presented by the parties.  Id.  Here, the parties have stipulated that a "blended" rate of $200 per hour is a reasonable rate for all plaintiffs' attorneys.  As there is no apparent reason for concluding the parties' agreement as to a blended rate is unreasonable, the Court adopts the parties' stipulated rate.  Applying the indicated rate to the hours reasonably expended, the Court concludes the lodestar fee in this case is $917,980.00.

Determination of the lodestar fee does not end the inquiry.  As the Supreme Court noted in Hensley, 461 U.S. at 436:  "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."

In determining a reasonable fee, the Court has considered the various Johnson factors,

---

[10]  *The Court has not excluded time spent by plaintiffs, and objected to by defendants, exploring the extent of defendant's insurance coverage.  While the question is close, and such time may not be appropriately allowed in some instances, the Court concludes such efforts were reasonably related to settlement.*

recognizing that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[11] <u>Hensley</u>, 461 U.S. at 435 n.9; *see* <u>Blum</u>, 465 U.S. at 898-900.  Plaintiffs suggest that the undesirability of the case warrants a higher fee, but they do not assert the case was undesirable from the standpoint of public censure or anything similar.  Rather, they suggest their counsel had a significant job in managing a large, differing group of plaintiffs.  Undoubtedly, organizing and representing a group of plaintiffs like that involved here was more complex and time-consuming than representing a single plaintiff would have been.  However, the time records reflect many hours spent by plaintiffs' lawyers and paralegals in client conferences and meetings and in scheduling and coordinating those meetings.  Defendants did not object to the extra time charged as a result of the group representation and those hours have not been reduced.  The Court concludes no further adjustment, upward or downward, is warranted in this regard.

Plaintiffs also argue the fee award should reflect that the case was contentious and hard fought in discovery and otherwise.  Unquestionably, the case has been hard fought and lengthy, but the time necessary to deal with the contentious nature of the case is fully

---

[11] *In* <u>Johnson v. Georgia Highway Express, Inc.</u>, *488 F.2d 714, 717-19 (5th Cir.1974), the Fifth Circuit articulated twelve factors to be used as guidelines when calculating a reasonable fee award: the time and labor required, the novelty and difficulty of the questions presented by the lawsuit, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, any time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the attorneys' experience, reputation and ability, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases.*

reflected in the submitted time records.  Defendants have not suggested plaintiffs spent too many hours on discovery or, in general, other aspects of the case, and the Court has not reduced the time included in the lodestar calculation on the basis of unreasonably large expenditures of time.

Defendants contend the results obtained warrant a substantial reduction of the lodestar fee and the Court concurs that, in this case, that is by far the most significant factor.  *See* Hensley, 461 U.S at 436 (degree of success obtained is "the most critical factor" in determining the reasonableness of a fee award).  Otherwise, the Court concludes the Johnson factors do not suggest an adjustment up or down from the lodestar computation.  *See* Blanchard v. Bergeron, 489 U.S. 87, 94 (1989) ("Johnson factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation.").

There is no precise rule or formula for determining when an adjustment for results obtained is appropriate.  Hensley, 461 U.S. at 436.  Where a plaintiff has obtained "excellent results," the prevailing plaintiff should recover his full fee despite prevailing on less than all of his claims.  *Id*. at 435.  Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Id*. at 436.

Clearly, the plaintiffs' success here was partial, rather than total.  At the outset,[12] the

---

[12] *This action was initially filed as two cases, one by Mr. Evans, Southeastern Oklahoma Family Services, and certain patients representing a putative class of mental health patients, and*

case involved 26 plaintiffs and 12 defendants.  In addition to the First Amendment claim which ultimately proceeded to trial, plaintiffs initially pursued a variety of claims, including claims under the Boren amendment and 42 U.S.C. §6009.[13]  Judgment was ultimately entered for defendants on all claims except for some plaintiffs' First Amendment retaliation claims against defendants Fogarty and Brown.  Undoubtedly there was some overlap in the factual circumstances undergirding those other claims and the First Amendment claim upon which some plaintiffs prevailed and, hence, in the work done on them.  However, the Court has little doubt that at least a portion of the time spent early in the case would not have been required had the action proceeded purely as a First Amendment retaliation case.[14]

Simply using a proportional reduction based on the number of successful plaintiffs' claims is inappropriate, particularly where, as here, the plaintiffs' claims were largely interrelated or had similar factual underpinnings.[15]  Similarly, a purely mathematical computation comparing the amount recovered to the amount sought is inappropriate.  Nonetheless, as Hensley makes explicit, consideration of the results obtained is necessary and may result in a reduced fee, even where interrelated claims or theories of recovery are

_a second by the other individual and corporate plaintiffs.  The cases were later consolidated._

[13]   _In addition to compensatory and punitive damages, the plaintiffs also sought injunctive relief._

[14]   _However, as most of these claims were dismissed relatively early, their effect on the overall time spent was of lesser significance._

[15] _After the disposition of various pretrial motions, the sole claims remaining for trial were the individual and corporate plaintiffs' retaliation claims._

involved.

Resolution of the attorney's fee issue has been made more difficult by plaintiffs' persistence in presenting their fee claim as a single requested amount, unadjusted for counsel's efforts related to nonprevailing plaintiffs and without any differentiation between the defendants. There is no attempt to allocate the fee award between the defendants or analyze the amount of a reasonable fee as to defendant Brown, as opposed to defendant Fogarty.[16] Also, the time records submitted, while sufficiently detailed to identify the time spent and types of services performed, do not, in many instances, provide the level of detail needed to permit the Court to make a specific determination of time spent on particular plaintiffs' claims, even where allocation should theoretically be possible.[17]

From the standpoint of clearly segregable attorney time, the most significant, unsuccessful claims, in terms of hours expended, appear to consist of those asserted against the Oklahoma Foundation for Medical Quality ("OFMQ"). There was considerable research and separate briefing related to OFMQ's two motions to dismiss (filed before consolidation

---

[16] *The extent of the relief obtained against Brown significantly differed from that obtained against Fogarty. Also, substantial time appears to have been spent negotiating potential settlements with each defendant separately; it appears unreasonable to assess Fogarty for time spent negotiating with Brown, and vice versa. Other differences exist in the relative positions of Fogarty and Brown.*

[17] *The Supreme Court noted in* Blum, *465 U.S. at 900, that "acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee." Id. at 900. In most cases the number of hours reasonably expended will reflect a deduction made for time spent on unsuccessful claims. The time records submitted, however, did not allow the reduction to be made. See* Hensley, *461 U.S. at 437 (Counsel "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.").*

of the two cases).  Even as to the First Amendment claim, appreciable time undoubtedly was spent pursuing retaliation claims against defendants who prevailed, such as Dr. Mitchell, Jana Webb and the Board member defendants.

From the standpoint of impact on the appropriate adjustment to the lodestar, the most significant factor relates to the failure of the corporate plaintiffs to prevail on their claim/theory that the defendants retaliated against them by paying them less than they paid other private providers.  If this case was a $30 or $40 million dollar case, it was so because of the retaliation claims based on the alleged differential payments asserted by the corporate plaintiffs, none of whom prevailed against any defendant.  The records before the court indicate[18] that this theory of recovery consumed a substantial amount of the pretrial preparation, as reflected by plaintiff's counsel's extensive efforts to secure and analyze payment records from UNISYS or others, and the like.  Stated otherwise, if the question was how much time would it take to prepare and try a case based on the theory upon which the successful, individual plaintiffs ultimately prevailed (i.e. retaliation in the form of defamatory comments coupled with a threat of reprisal, resulting in what was, for the individual plaintiffs, essentially a damages claim for mental anguish), it is clear that substantially less time would have been involved than what the plaintiffs claim here.[19]

---

[18]*As noted previously, the court has been handicapped in its task of adjusting the lodestar by the records' lack of specificity.  See supra note 7.*

[19]  *See Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1204 (10th Cir. 1986) (indicating there are cases where large reductions in the requested fee are warranted and noting that the plaintiff there had "failed entirely on his major theory of damage....").*

Success can be measured not only by the number of claims on which, and number of defendants against whom, the party prevails, but also, when damages are sought, by the size of the judgment that is ultimately entered.   "Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Farrar, 506 U.S. at 114 (quoting Riverside v. Rivera, 477 U.S. 561, 585 (1986)).   "Such a comparison promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" Id. at 115 (quoting Blanchard, 489 at 96)).   At trial, plaintiffs sought damages in excess of thirty million dollars,[20] but the amount of damages recovered by the named plaintiffs against Fogarty and Brown, after rulings on defendants' Rule 50 motions,[21] was substantially less.[22]

The court recognizes that a plaintiff's right to recover an attorney's fee in a civil rights case does not depend on obtaining substantial monetary relief, as § 1988   "is a tool that

---

[20]   *Plaintiffs offered to settle their case for $40 million, suggesting that was a reasonable compromise for a damages claim that might exceed $100 million.  Exhibit C to plaintiffs' July 23, 2003 brief, submitted in connection with their initial fee application.  Even adjusting for the posturing routinely involved when parties commence settlement negotiations, it is apparent from the proposal, as well as from the evidence offered at trial, that plaintiffs seriously sought damages in excess of $30 million.*

[21]*Although the jury found  in favor of the corporate plaintiffs and against defendant Fogarty, awarding approximately $14 million in damages, the court entered judgment as a matter of law in Fogarty's favor on those claims and also entered judgment as a matter of law on certain of the individual plaintiff's verdicts.*

[22]   *As defendants suggest, the prevailing plaintiffs, as a group, recovered approximately two percent of the money damages sought.*

ensures the vindication of important rights." <u>Farrar</u>, 506 U.S. at 122 (O'Connor, J., concurring). <u>Hensley</u>, 461 U.S. at 429 ("The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.") (internal quotation omitted). A fee is not automatically reduced even if only nominal damages were awarded. Nonetheless, this was not an action involving rights that were solely nonpecuniary in nature,[23] or in which monetary relief was secondary or not the principal motivation. Compensation clearly was the primary purpose of the lawsuit.[24] While not insignificant, the relief obtained was "limited in comparison to the scope of the litigation as a whole." *Id*. at 440.

Taking into account the degree of success obtained in relation to the hours reasonably expended on the litigation, the Court concludes the prevailing plaintiffs, in the aggregate, should recover a reasonable attorney's fee against defendant Fogarty of $300,000. *See generally* <u>Gudenkauf v. Stauffer Communications, Inc.</u>,158 F.3d 1074, 1076 (10th Cir.1998)(50% reduction in lodestar appropriate in mixed-motive discrimination case in which plaintiff established termination was partially motivated by pregnancy, but not that discriminatory motives caused her termination, precluding an award of reinstatement, back pay or damages); <u>Dill v. City of Edmond</u>, 2003 WL 21662099, at *2-4 (10th Cir. July 16,

---

[23] *Unlike <u>Farrar</u>, this was not an action in which the plaintiffs only recovered nominal damages or which served no public purpose.*

[24] *Although equitable relief was sought, none was obtained.*

14

2003)[25] (80% reduction in full lodestar recovery not an abuse of discretion when plaintiff failed to achieve principal goals of lawsuit and overall success was "quite limited."). *See also* <u>Bee v. Greaves</u>, 910 F.2d 686 (10th Cir. 1990).

Additional considerations impact the determination of the fee which defendant Brown should be required to pay. Not only was the total recovery obtained against her substantially smaller than that obtained against Fogarty, but only two plaintiffs, Mr. and Mrs. Thrift, prevailed against her.[26] The court finds the Thrifts should recover attorney's fees against Ms. Brown in the amount of $25,000 each for a total fee recovery against her of $50,000.

Plaintiffs also seek, as part of their attorney's fees, reimbursement for the time spent by paralegals, which is a proper element of a fee request. The methodology for determining a reasonable fee attributable to the efforts of paralegals is the same as for attorneys. <u>Case</u>, 157 F.3d at 1249. Plaintiffs state 1185.4 hours were spent by paralegals. Defendants do not dispute that the time was spent or that the time spent on particular tasks was reasonable, as noted above. Considering the same factors as were identified earlier in connection with the fees for plaintiffs' counsel, the Court concludes the hours should be reduced by fifty,[27] for total paralegal hours of 1135.4.

---

[25] *<u>Dill</u> is an unpublished decision cited for persuasive value only under 10th Cir. R. 36.3(B).*

[26] *Many of the plaintiffs' evidentiary bases for alleged retaliation, such as the number and manner of conducting audits, were not grounds for obtaining relief from Brown.*

[27] *The reduction is based on the 25 hours identified in footnote 9 above, plus 25 hours attributable to work on the mock trial, identified as the "research trial" in most of the applicable records.*

The parties were not able to reach an agreement as to the reasonable hourly rate for the paralegals.  Plaintiffs seek paralegal fees based on an hourly rate of $100.  Defendants object that $100 is too high.   As with attorney's fees, the standard is the prevailing rate in the local community.  No evidence was offered at the fee hearing as to paralegal rates beyond counsels' statements.  Briefly summarized, plaintiffs' counsel indicated his firm ordinarily charges paralegal time at $65 to $95 per hour, with "rare" instances of a rate as high as $125.  Plaintiffs' request for $100 per hour was principally based on the "negotiated blended rate" plaintiffs agreed to with their attorneys.  Counsel for Fogarty indicated his firm billed paralegal time at $65 to $75 per hour, and quoted a "regular" rate of $70.  Counsel for Brown indicated his firm's paralegal charges went as high as $70 per hour.

In determining the appropriate rate, the Court concludes little weight should be given to the "negotiated" rate agreed to by plaintiffs and their counsel.  That arrangement included a contingency element, pursuant to which plaintiffs would pay a smaller hourly fee as the case progresses, with a higher rate potentially applicable depending on results.[28]   The contingency element, coupled with the absence of any proof as to the amounts or rates plaintiffs actually paid, prevents plaintiffs' fee agreement from being viewed as a significant indicator of market rates.  Considering the various statements of counsel and the parties' submissions, the Court concludes a reasonable hourly rate for paralegal time is $70.  Using

---

[28]   *The contract including the various rates was not introduced in evidence, so the exact nature of the contingency is unknown.  The above description appears consistent with counsel's description of the arrangement.  Also, the printouts of time records submitted by plaintiffs reflect an hourly rate of $65 for the paralegals.*

that rate, the "lodestar" computation for paralegal time is $79,478.

Adjustment of the fee in light of the results obtained is also appropriate as to paralegal time. For the reasons discussed above, and on the assumption that paralegal time largely tracks the efforts and focus of plaintiffs' attorneys, comparable adjustments to the lodestar calculation for paralegals' fees have been made. So adjusted, the Court concludes the prevailing plaintiffs, in the aggregate, should recover reasonable paralegal fees of $27,000 as to defendant Fogarty and that Mr. and Mrs. Thrift should recover $2500 each as to defendant Brown.

## II. Costs and expenses

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Under this rule, costs include those categories of items set out in 28 U.S.C. §1920. Pursuant to that section, plaintiffs and certain defendants were awarded costs by the Clerk of Court, as prevailing parties. The amounts of the awards were as follows: plaintiffs, $13,949.40; defendant Fritz, $1344.52; defendants Webb, Mitchell, OHCA board members, and the OHCA, $6642.50; and defendant Brown, as to all plaintiffs other than Mr. and Mrs. Thrift, $5330.66.

Plaintiffs have not objected to the awards in favor of defendants Fritz and Webb et al., hence costs will be taxed as determined by the Clerk with respect to them. As to Brown, plaintiffs object that Brown is not a prevailing party and that any award in her favor is inequitable. Consistent with the above discussion of attorney's fees, Brown plainly is the

17

prevailing party as to all plaintiffs other than Mr. and Mrs. Thrift.[29]  The plaintiffs who did not prevail against Brown cannot avoid exposure to costs based on the fact that other plaintiffs did prevail.  Modick v. Carvel Stores of New York, Inc., 209 F.Supp. 361 (S.D.N.Y. 1962); Bryant v. Whalen, No. 88 C 4834, 1992 WL 198946, (N.D. Ill. August 12,1992).  Except as to Mr. and Mrs. Thrift, Brown was the prevailing party and the costs award in her favor was proper.

As to plaintiffs' claim for costs, plaintiffs object that the Clerk's determination was inadequate.  Plaintiffs submitted two applications, one including costs from approximately the inception of the case through the conclusion of the first trial, and the second including costs incurred since then.  They raise two specific objections to the Clerk's costs determination: that the award for transcripts/depositions was based on an overly restrictive view of what depositions were "necessarily obtained" for use in the case[30] and, similarly, that the Clerk's view of what copies were "necessarily obtained" was unreasonably restrictive.[31]  Defendants have objected to the costs award in favor of the prevailing plaintiffs on the basis that their application provides insufficient detail to support the requested amounts, that it fails to identify the costs attributable to the prevailing plaintiffs (versus the plaintiffs who did not

---

[29]  *The authorities relied on by plaintiffs deal with a party being considered "prevailing" where the party prevails on some, but not all, of his or her claims.  Here, the issue is not only one of multiple claims, but of multiple parties.  As to the claims of all parties other than Mr. and Mrs. Thrift, Brown prevailed.*

[30]  *Plaintiffs sought $18,081.96 in transcript/deposition costs and were awarded $8988.47.*

[31]  *Plaintiffs sought $32,828.62 in exemplification/copying costs and were awarded $4058.37.*

prevail), and other apportionment issues similar to those raised with respect to the plaintiffs' attorney's fee request.

Plaintiffs' submissions do not allow the Court to identify which depositions or copying costs the Clerk allowed or disallowed, or those which plaintiffs view as improperly disallowed. Therefore, it is difficult, if not impossible, to determine whether particular depositions or copies should have been included in the costs award. From a general review of the invoices attached to the requests, the Court can identify many depositions that were used in the case or related to persons who might reasonably be viewed as key witnesses.[32] However, there are also a number of depositions of persons who did not testify and whose relationship to the case is not otherwise apparent to the Court. While the Clerk's application of the "necessarily obtained" standard to depositions and copies may have been more restrictive than would ordinarily be warranted, the Court views that as being offset by the fact that many of the depositions and copies were attributable to the claims of the corporate plaintiffs, who are not prevailing parties.[33] Although apportionment is difficult, the Court concludes some adjustment is appropriate, as costs incurred by non-prevailing plaintiffs should not be shifted to defendants. Giving effect to that adjustment, the Court concludes the Clerk's determination should be confirmed.

---

[32] *Plaintiffs assert the Clerk disallowed the costs of any deposition which was either not introduced or not used for impeachment purposes at trial. The practice in this district has been to allow recovery for depositions that were actually used at trial or involved key witnesses.*

[33] *The claims of the corporate plaintiffs were particularly "paper intensive," involving efforts to prove damages by establishing differing reimbursement rates among providers, and the like.*

The Court also concludes, largely for the same reasons underlying the attorney's fees determination, that it is inappropriate to assess defendant Brown with the full amount of costs otherwise allowed plaintiffs.   Absent any specific basis suggested by the parties for allocation, the Court concludes that a reasonable apportionment of costs as to Brown is $3000.

In sum, the Court finds the prevailing plaintiffs should recover costs from Fogarty in the amount of $13,949.40, as determined by the Clerk.  Mr. and Mrs. Thrift shall recover costs from Brown in the amount of $3000.[34]  Defendants  Fritz, Webb, Mitchell et al. shall recover costs as determined by the Clerk and described above.

Plaintiffs also seek to recover various expenses they incurred, over and above what they are awarded as costs pursuant to 28 U.S.C. §1920.  "While only those items listed under section 1920 may be awarded as costs, other out-of-pocket expenses incurred during litigation may be awarded as attorney's fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable."  Jane L. v. Bangerter, 61 F.3d 1505, 1517 (10th Cir. 1995) (citing Bee v. Greaves, 910 F.2d 686, 690 (10th Cir. 1990)).  Here, plaintiffs seek to recover certain expert fees, supposedly totaling $44,336,[35] and various other expenses totaling $41,210.36.

---

[34]  *Aggregating the separate costs recovery of the Thrifts with the prevailing plaintiffs' recovery against Fogarty, the total costs awarded the prevailing plaintiffs is thus increased by $3000.*

[35]  *Included are fees of $8336 paid to Mr. McDaniel and $36,000 paid to Dr. Phil James and/or Trial Solutions Inc.  Plaintiffs' April 1, 2005, brief, p. 15, and plaintiffs' July 23, 2003, brief, p. 14.  The McDaniel fees referenced in the two briefs do not add up to the sum plaintiffs last*

As for the other expenses for which reimbursement is requested, the plaintiffs appear to seek copying or exhibit preparation charges, travel costs, long distance charges, and the like, all of which are potentially reimbursable if they meet the Bee standard and their amount and reasonableness are proved appropriately.

With respect to expert fees, plaintiffs rely on the general standard noted in Bee. However, in order for expert fees to be reimbursable, there must be explicit statutory authority allowing them. West Virginia Univ. Hosps. v. Casey, 499 U.S. 83, 87 (1991). In Casey, the Supreme Court concluded 42 U.S.C. § 1988 did not provide the necessary, express authorization for such fees. Congress subsequently amended § 1988 to permit the recovery of expert fees in certain cases.[36] The amendment to §1988 provides that a court awarding attorneys fees under that section "in any action or proceeding to enforce a provision of section 1981 or 1981a ... in its discretion, may include expert fees as part of the attorney's fee." The allowance of expert fees is limited to cases brought under 42 U.S.C. §§ 1981 and 1981a. Padro v. Commonwealth of Puerto Rico, 100 F.Supp.2d 99, 109 (D. P. R. 2000) (citing cases). The present action asserted claims pursuant to 42 U.S.C. §1983 rather than § 1981 or § 1981a, hence the necessary statutory authorization for the recovery of expert fees is lacking. Plaintiffs' request for reimbursement of such fees must therefore be denied.

Plaintiffs seek $41,210.36 in other expenses, based on $30,624.98 sought via their

_____

indicated as the total.

[36] *See Civil Rights Act of 1991, Pub.L.No. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. §1988(c)).*

21

July 23, 2003, motion[37] and $10,585.38 sought via their April 1, 2005, motion.[38]  Review of

plaintiffs' request is made extraordinarily difficult by the deficiencies in the supporting

information provided.  Plaintiffs' 2003 motion states the supporting data is included in

Exhibit E to that filing, but Exhibit E does not contain any listing of expenses.[39]  Further, in

both motions, plaintiffs indicate the supporting expense data includes both expenses sought

to be recovered as costs, pursuant to §1920, and other expenses sought incident to the

recovery of attorney's fees, pursuant to §1988.  They state the amounts sought as costs are

indicated by yellow highlighting in the first motion and by underlining in the second.[40]

However, as noted above, the first motion has no supporting expense information,

highlighted or not.  The second motion, which does include supporting expense data as

Exhibit 2, does not have any underlining indicating what items were sought as costs.[41]

Although the deficiencies in documentation would warrant the denial of any award

of expenses,[42] the Court is reluctant to do so.  In litigation as extensive as this, it is apparent

---

[37]*The motion is Doc. no. 265 and the supporting brief is Doc. No. 267.*

[38]*The motion/brief is Doc. No. 466.*

[39] *Both the filed version of the motion and the courtesy copy delivered to chambers appear to include only recaps of attorney's fees, not expenses.*

[40] *Plaintiffs' July 23, 2003, brief, pp. 14-15 [Doc. No. 267].  Plaintiffs' April 1, 2005, brief, pp.15-16 [Doc. No. 466].*

[41] *The expenses listed in the second motion, though not totaled in any way helpful to the Court, appear to amount to approximately $26,600.  Deducting the $16,451 sought by plaintiffs in their costs application covering the same approximate period of time, the difference of about $10,000 correlates to the amounts plaintiffs indicate they seek as costs in the second motion.*

[42] *See Allison v. Bank One - Denver, 289 F.3d 1223, 1249 (10th Cir. 2002).*

that significant expenses meeting the <u>Bee</u> standard will have been incurred. The policy considerations underlying the statutory provisions for recovery of costs and expenses are especially strong in a civil rights action. <u>NAACP v. City of Evergreen</u>, 812 F.2d 1332, 1337 (11th Cir.1987)("'[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988' and 'the standard of reasonableness is to be given a liberal interpretation.'") (quoting <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1192 (11th Cir.1983)).

With respect to the 2003 motion, which lacks supporting expense information altogether, there is substantial overlap with the costs application for the same period. The costs data indicates that copying charges of approximately $20,000 and approximately $1300 in long distance phone charges and postage were sought as part of the costs application request, but were not granted. The Court concludes these items generally may be reimbursed as expenses and that, although the supporting detail is not optimum,[43] the plaintiffs have provided sufficient factual support to be reimbursed for expenses of $21,300 for the time period covered by the 2003 motion.

The 2005 motion seeks $10,585.38 in expenses. In addition, there appear to be approximately $8000 in copying charges and $854.62 in other charges which were pursued

---

[43] *Under the formal standards articulated in the cases, each expense for which reimbursement is sought must be reasonably documented as to its purpose and reasonableness. However, particularly as to copying charges, the Court concludes it is impractical to require much detail and treats plaintiffs' very cursory summary as sufficient.*

as part of the costs recovery, not included in the costs award, but which would otherwise qualify as appropriate expenses subject to reimbursement under §1988.   As noted above, the documentation does not permit differentiation between items sought to be recovered as costs and those claimed as part of expenses.  However, the Court concludes plaintiffs have made a sufficient showing to justify, in general, expenses of $19,440 as to the time period covered by the 2005 brief.

The determination of total reimbursable expenses of $40,740 does not end the inquiry. As defendants correctly note, plaintiffs have made no effort to segregate the costs associated with the claims of the plaintiffs who did not prevail from those who did.  As with the attorney's fees, apportionment is difficult due to the substantial overlap between the plaintiffs' claims and theories.  However, as with the attorney's fees, the Court concludes some adjustment must be made to reflect that a substantial portion of the expenses incurred are reasonably attributable to claims asserted by non-prevailing parties.  This factor applies in particular to the extensive copying charges and the paper intensive nature of the non-prevailing corporate plaintiffs' claims.  Further, any award of expenses must reflect the different circumstances applicable to Brown, noted above.

Taking into account these factors, including the deficiencies in supporting documentation and the noted need for apportionment, the Court concludes plaintiffs should recover $15,800 in aggregate expenses from Fogarty and that Mr. and Mrs. Thrift should recover an additional $2500 in expenses from Brown.

### III.  Prejudgment interest

24

Plaintiffs request prejudgment interest on the judgment and the attorney's fees, expenses and costs determined by this order. Defendants argue that the recovery of prejudgment interest is part of the substantive claim in the case and that, as an appeal from the judgment has already commenced, this Court lacks jurisdiction to decide plaintiffs' entitlement to such relief. Insofar as interest on the underlying judgment amount is concerned, the Court concurs with defendants' position. Prejudgment interest is considered to be an element of compensatory damages. <u>Johnson v. Cont. Airlines Corp.</u>, 964 F.2d 1059 (10th Cir. 1992). As the judgment in this case has long since been entered and the time for filing a motion to amend under Fed.R.Civ.P. 59 has expired, the Court lacks jurisdiction to effect a substantive change in the judgment entered.

The request for prejudgment interest, insofar as it seeks interest on the attorney's fees, costs and expenses, is treated as a different matter. The trial court retains jurisdiction to decide such collateral issues and the Court knows of no impediment to an award of prejudgment interest if it is otherwise appropriate. In general, a party's entitlement to prejudgment interest on an attorney's fee award is within the trial court's discretion. <u>Praseuth v. Rubbermaid Inc.</u>, 406 F.3d 1245 (10th Cir. 2005). That exercise of discretion should take into account the equities of the situation, including the need to fully compensate the plaintiff for losses suffered. *See* <u>Anixter v. Home-Stake Production Co.</u>, 977 F.2d 1549, 1554 (10th Cir. 1992). Other considerations include the recognition of the time value of money and that, particularly in long-running cases such as this, interest may be necessary to make the plaintiff whole. On the other hand, the indeterminate nature of the principal

25

amount may counsel against the award of prejudgment interest. <u>Williamson v. Handy Button Machine Co.</u>, 817 F.2d 1290, 1298 (7th Cir. 1987) (cited with approval in <u>Big Elk v. Bd. of Co. Com. of Osage Co.</u>, 2001 WL 82292(10th Cir. 2001)).[44]

The Court concludes prejudgment interest on the attorney's fee award is not appropriate in this case principally because the "blended" rate  agreed to by the parties — $200 per hour — is high enough to account for the time value of money and the long-running nature of the case.  The parties' agreement is that the blended rate apply to all hours expended in the case, from inception to the present.  At the outset of the case, several of plaintiffs' attorneys did not normally charge, and would not have commanded, hourly rates at that level.  Indeed, one of the most experienced civil rights attorneys engaged by plaintiffs indicated that, as of 2003, his hourly rate for federal litigation was $175 per hour.[45]  The hourly rate agreed to and applied here sufficiently compensates plaintiffs for the time value of money as it relates to the fees, without the addition of prejudgment interest.[46]

## IV.  Summary

In light of the foregoing, plaintiffs' motion for attorney's fees, expert fees, expenses

---

[44]*Big Elk is an unpublished decision cited for persuasive value only under 10th Cir. R. 36.3(B).*

[45] *Salem affidavit, attached to plaintiffs' motion for fees and expenses filed July 23, 2003, para. 15.*

[46] *The circumstances are not the same as to prejudgment interest on costs and expenses. However, given the noted uncertainties in documentation and the absence of a suggested computation by any party, the Court declines to award prejudgment interest on the costs or expenses as well.*

and prejudgment interest [Doc. #466] and appeal from the Clerk's cost determination [Doc. #544] are **GRANTED** in part and **DENIED** in part.  Judgment will be entered as follows: The prevailing plaintiffs, in the aggregate, are awarded attorney's fees against defendant Fogarty in the amount of $300,000, paralegal fees in the amount of $27,000, costs in the amount of $13,949.40 and additional expenses in the amount of $15,800, for a total award of $356,749.40.  The Thrifts are each awarded attorney's fees against Ms. Brown in the amount of $25,000 (for a total fee recovery of $50,000) and paralegal fees in the amount of $2500 (for a total fee recovery of $5,000), total costs in the amount of $3000, and additional total expenses in the amount of $2500, for a total award of $60,500.

    **IT IS SO ORDERED**.

    Dated this 4th day of October, 2005.


                                    _____
                                    JOE HEATON
                                    UNITED STATES DISTRICT JUDGE